MARILYN L. MCCARTHY *vs.* WILLIAM E. MCCARTHY.

No. 93-P-933.

Hampden. April 15, 1994. - May 18, 1994.

Present: PERRETTA, KASS, & PORADA, JJ.

*Divorce and Separation*, Separation agreement, Modification of judgment, Child support. *Contract*, Separation agreement.

A judge of the Probate Court exceeded her powers under G. L. c. 208, § 37, when she incorrectly modified a marital separation agreement that had independent legal significance to increase the child support payment by the husband and entered an order that the husband be responsible for the expenses of college education for the children, where the separation agreement made no provision for such expenses and where there was no significant change in the parties' relative circumstances. [490-494]

COMPLAINT for divorce filed in the Hampden Division of the Probate and Family Court Department on March 11, 1987.

A complaint for modification, filed on August 23, 1991, was heard by *Marie E. Lyons*, J.

*Charles F. Ksieniewicz*, for William E. McCarthy, submitted a brief.

KASS, J. When, as here, the parties have entered into a marital separation agreement which, by its terms, is to survive with independent legal significance an anticipated divorce judgment, something more than a material change in circumstances must be established in order to vary the economic terms on which the divorcing parties have agreed. *Knox* v. *Remick*, 371 Mass. 433, 436-437 (1976). *Stansel* v. *Stansel*, 385 Mass. 510, 515 (1982). *Ames* v. *Perry*, 406 Mass. 236, 239-243 (1989)(dealing particularly with the application of the "something more" principle to support of children). *DeCristofaro* v. *DeCristofaro*, 24 Mass. App. Ct.

231, 236 n.7 (1987)(in which the "something more" formulation first appears). *Dennis* v. *Dennis,* 29 Mass. App. Ct. 161, 162-166 (1990).

In the instant case, a judge of the Probate Court, acting on a complaint for modification, raised the weekly child support payment that the former husband was to pay from $150 to $237.40. The judgment included a general order requiring that the former wife "shall be responsible for the payment of the parties' children's post high school education."[1] It is apparent from the judge's underlying findings of fact and conclusions of law that she increased the support payments to meet expenses of higher education. She wrote that, "I find the defendant [the father] should contribute to college education." The judge also wrote, "Both parties have the financial ability to contribute to the college education of their children. It would be grossly inequitable to expect the plaintiff [the wife] to use her equity and income without assistance from the defendant."

The separation agreement in question, entered into May 19, 1987,[2] made no provision for the expenses of college education. Contrast the agreement in *DeCristofaro* v. *DeCristofaro,* 24 Mass. App. Ct. at 232. That the eldest child attended college (he was a junior at the time of the modification proceedings) and that the other children may do so is not a change in the parties' circumstances, let alone a *material* change in circumstances, and certainly not *something more* than a material change in circumstances.

At the time of the divorce, the eldest child was 15, and the possibility of his going to college would have been on the horizon. Yet, in their agreement, the parties, who were represented by counsel, chose not to obligate themselves on the

---

[1] There were three children of the McCarthy marriage, aged 21, 17, and 12, at the time of the judge's findings, which were made June 4, 1993.

[2] The agreement declares that it is signed by the parties on May 19, 1989, but that is an obvious clerical error as the agreement was then incorporated in the divorce judgment entered on May 19, 1987. The findings, made by the Probate Court judge who sat on the modification proceedings which have generated this appeal, properly found that the separation agreement had been entered into on May 19, 1987.

matter of higher education expenses. This is not to be wondered at as the husband at the time of divorce had an annual income of $31,000 from his employment as a police officer in Palmer. Similarly, at the time of the divorce, the wife had an annual income of $31,000. Her income had increased to $51,421 (from employment as a registered nurse health educator for disabled adults) in the year preceding the modification proceedings. The husband's annual income had gone to $35,000, an insignificant change, although he had remarried and his household had the benefit of his second wife's annual income of $21,300. See *Silvia* v. *Silvia*, 9 Mass. App. Ct. 339, 342 (1980). The parties to the separation agreement acknowledged their desire to be quit of one another economically, except for the matter of child support, by mutually waiving claims for alimony or to any pension or retirement plan of which the other might have the benefit.

Here, the judge was constrained by the separation agreement, which had independent significance and, under the cases we have referred to, that agreement is entitled to respect. In commenting on whether a separation agreement, indeed, has independent significance, we had had occasion to write, "It is the intent of the parties, rather than the inclination of the judge, which controls." *Parrish* v. *Parrish*, 30 Mass. App. Ct. 78, 83 (1991). Similar restraint inhibits altering what divorcing parties have provided for themselves. The judge's decision "that the defendant should contribute to college education," exceeded her powers under G. L. c. 208, § 37, in the face of the agreement and the absence of something more than a material change in circumstances.

The relative economic circumstances of the parties, if we examine the figures set out above, have changed scarcely at all. The former wife's household has the economic benefit of $5,855 per year[3] in support payments from the husband, so

[3]Under the separation agreement the former husband is to pay $150 per week, i.e., $7,800 per year. The former wife, however, was obliged under the agreement to give the former husband a mortgage note (secured by a mortgage on the former marital residence, which she was allowed to occupy) carrying a payment which could be broken down to $37.40 per week and could be taken as a credit against the support payments. The net pay-

that the aggregate gross income available to that household is approximately $57,000. As to the household of the former husband, the aggregate gross income available, after deducting the support payments, was approximately $50,450. Their resources are approximately equal, which is about where they were in 1987 when they divorced.

To be sure, college expenses may be a support obligation as regards a child under age 23 and domiciled with the parent upon whom the child is principally dependent. G. L. c. 208, § 28, as amended by St. 1991, c. 173, § 1.[4] As we have observed, however, college expenses for the McCarthy children were not an unforeseeable financial need and that those expenses in fact materialized do not constitute more than a material change in circumstances or, to use the analogous term, a "countervailing equity." See *Knox* v. *Remick*, 371 Mass. at 437; *Ames* v. *Perry*, 406 Mass. at 240. The latter opinion, at 240-241, recognized the desirability of adherence to child support agreements of divorcing parties so as to avoid recurrent litigation. *Ames* v. *Perry* reminds, however, that there are limits to the extent divorcing parties may bind children who, after all, are not parties to the contract, and the interests of a child, therefore, may be a weighty "equity." *Id.* at 241. See also *Knox* v. *Remick*, 371 Mass. at 437.[5]

Although the phrase "countervailing equity" continues to be in the process of definition, we think that among the con-

---

ment by the former husband, therefore, came to $112.60 per week, i.e., $5,855.20 per year.

[4]Although the eldest son lives in an apartment he has rented in Worcester when attending college, the parties and the judge appear to assume continued domicil with his mother.

[5]Recent legislation has diluted substantially the independence of agreements of parents that have independent legal significance. It inserted in G. L. c. 208, § 28, and G. L. c. 209, § 37, the sentence: "A modification of child support may enter notwithstanding an agreement of the parents that has independent legal significance." See St. 1993, c. 460, §§ 61 and 66. That act was approved January 13, 1994. The quoted sentence is part of new material added to G. L. c. 208, § 28, and G. L. c. 209, § 37, which requires that support obligations for children be consistent with child support guidelines promulgated by the Chief Administrative Justice.

ditions it contemplates is a deterioration in the economic situation of the more dependent spouse which renders that spouse unable to meet basic needs, so that public support is likely to be required in behalf of the dependent spouse and children in turn dependent on her or him. While financing higher education is surely not a marginal family expense, as is plain from its inclusion as a support consideration in G. L. c. 208, § 28,[6] it is not so at the core of existence as to warrant setting aside what the parties have agreed to provide for one another in a separation agreement which they expressly desired to retain independent significance apart from their divorce judgment, at least in circumstances as those here, where there has been no significant change in the relative circumstances of the parties, and when neither party possesses significant wealth. Education expense, for example, is not among the factors to be considered in setting a child support order under the Child Support Guidelines promulgated by the Chief Administrative Justice (now Chief Justice for Administration and Management).

For the reasons stated, the judgment of modification is reversed and the complaint for modification shall be dismissed.

*So ordered.*

---

[6]See Atkinson, Support for a Child's Post-Majority Education, 22 Loy. U. Chi. L.J. 695, 697 (1991); Kline, Clifford Trusts and the Parental Duty to Provide a College Education: *Braun* v. *Commissioner*, 46 U. Pitt. L. Rev. 537, 547-548 & n.67 (1985); Wallerstein & Corbin, Father-Child Relationships After Divorce: Child Support & Educational Opportunity, 20 Fam. L.Q. 109, 119-125 (1986).