Lee-Ann Willwerth (mother), the former wife of Bruce Strayton (father), appeals from a judgment of modification entered by the Probate and Family Court requiring her to pay forty-five percent of all college expenses incurred by the parties' child. We reverse.
Background. The parties were divorced on July 24, 2001 (nunc pro tunc to March 23, 2001), pursuant to a judgment of divorce incorporating their separation agreement. Under the terms of the separation agreement, the mother received primary physical custody of the parties' two year old child, and the father agreed to pay alimony and child support totaling $90,000 per year ($1,730.77 per week).[2] The parties agreed that child support would terminate upon the child's "emancipation" as defined in the separation agreement.[3] The definition of "emancipation" included a change in custody, such that child support would terminate if the child began living with the father "in essentially a primary custodial relationship." The separation agreement further provided that, prior to the child's emancipation, either party could seek a modification of child support upon a material change in circumstances.[4]
With respect to college, the separation agreement provided that the father "shall pay all college expenses of the unemancipated child at such post secondary educational institution as such child shall attend with the approval of both parties for up to four years of undergraduate study." Unlike child support, there was no language in the separation agreement expressly providing for the modification or termination of the father's obligation to pay for college. The provisions in the separation agreement regarding the minor child were merged with the judgment of divorce, while the other provisions survived as an independent contract.
In 2002, the parties entered into an agreement for modification (2002 agreement), which (1) terminated alimony as the mother had remarried, (2) reduced the father's child support payments, and (3) established the parties' respective obligations regarding the payment of the child's preschool tuition. The 2002 agreement left the separation agreement's college expense provisions unchanged, and expressly provided that "[a]ny and all provisions [of the separation agreement] which are not hereby modified and amended shall remain in full force and effect."[5]
In March of 2012, the child moved in with the father and the father's soon-to-be wife.[6] In March of 2013, the Probate and Family Court entered a modification judgment (2013 modification judgment) which incorporated an agreement of the parties (2013 agreement) providing that the child would reside primarily with the father and that "neither party shall pay child support to the other."[7] The 2013 agreement further provided that "[i]n all respects not modified herein, the prior Judgments in this case remain in full force and effect." Once again, the provisions in the separation agreement relating to college expenses remained unchanged. At the time of the 2013 modification judgment, the child was fifteen years old and attending public high school.
In November of 2014, the father filed a complaint for modification, seeking to modify the separation agreement by requiring the mother to contribute equally to the cost of the child's college education. As grounds for modification, the father alleged that, since the time of the divorce, his income had decreased, and there had "been a change in custody whereby the child has been residing with the [father] and the [mother] has had no child support order." On July 25, 2016, the parties and their respective attorneys appeared before a judge of the Probate and Family Court for a trial on the father's complaint for modification. At the time of the trial, the child had recently graduated from high school and was slated to attend Fairfield University in the fall. Fairfield University was the "most expensive" college that the child applied to, with an annual tuition of $60,290.
On August 31, 2016, the judge entered a judgment of modification (2016 modification judgment) providing that the father and the mother "shall each pay forty-five percent of all college expenses of the unemancipated child" and the child "shall be responsible for the remaining ten percent." The judge found that modification was warranted because "there has been a substantial and material change of circumstances in that [the child's] primary custody changed from [the] [m]other to [the] [f]ather" and the "[m]other pays no child support to [the] [f]ather." The judge further found that both parties "have the financial ability to finance the payment of [the child's] college costs in a similar manner" and that it would be in the child's best interests for the parties to contribute equally to his college education. The present appeal by the mother followed.
Discussion. "When the judgment to be modified incorporates an agreement of the parties, we have said that, notwithstanding that the agreement does not survive the judgment as a binding contract, we nevertheless will 'review the findings to determine whether the judge gave appropriate consideration to the parties' intentions as expressed in their written agreement, ... and to any changes in their circumstances since the last modification judgment.' " Cooper v. Cooper, 62 Mass. App. Ct. 130, 134 (2004), quoting from Huddleston v. Huddleston, 51 Mass. App. Ct. 563, 568 (2001). The mother argues that the judge (1) failed to give appropriate consideration to the parties' intentions as expressed in their separation agreement, and in their subsequent agreements for modification, and (2) erred in finding that there had been a material change in circumstances sufficient to warrant a modification of the college expense provisions. We agree.
1. The parties' intentions. "The interpretation of the separation agreement is a question of law, and is therefore 'afforded plenary review.' " Colorio v. Marx, 72 Mass. App. Ct. 382, 386 (2008), quoting from Judge Rotenberg Educ. Center, Inc. v. Commissioner of the Dept. of Mental Retardation (No. 1), 424 Mass. 430, 443 (1997). "Where an agreement does not survive, it is nevertheless appropriate for a judge to take heed of the parties' own attempts to negotiate terms mutually acceptable to them. ... To the extent possible, and consistent with common sense and justice, the modified judgment should take into account the earlier, expressed desires of the parties." Huddleston v. Huddleston, 51 Mass. App. Ct. at 569-570, quoting from Bercume v. Bercume, 428 Mass. 635, 644 (1999).
Here, we cannot say that the judge took into account "the earlier, expressed desires of the parties" when concluding that the 2013 custody change warranted a modification of the father's obligation to pay for college. While the separation agreement expressly provides for the termination of child support upon a change in custody, there is no similar language in the agreement with respect to college expenses. Had the parties intended for a custody change to also trigger a modification of the father's obligation to pay for college, they "easily could have included language" to that effect in the separation agreement. Merrimack College v. KPMG LLP, 88 Mass. App. Ct. 803, 806 (2016). Moreover, the separation agreement requires the father to "provide as a death benefit from his assets sufficient funds to fulfill his obligations for college expenses for the child." There is no language relieving the father of this duty in the event of modification or termination; rather, the duty exists until the father's obligation to pay for college is "fulfill[ed]." There is also nothing in the separation agreement suggesting that the parties intended for a change in custody to result in a new financial obligation for the mother with respect to the child (either in the form of child support or college contribution). The parties' conduct in 2013 is consistent with this interpretation. In 2013, when the parties agreed to the custody change, they also agreed that the mother would not pay child support, and they reaffirmed, rather than modified, the college expense provisions despite that college was "on the horizon." McCarthy v. McCarthy, 36 Mass. App. Ct. 490, 491 (1994).
Thus, when read together, the relevant provisions of the separation agreement demonstrate that the parties intended for the father to pay for the entirety of the child's college education notwithstanding a change in custody. See Merrimack College v. KPMG LLP, 88 Mass. App. Ct. at 805, quoting from Sullivan v. Southland Life Ins. Co., 67 Mass. App. Ct. 439, 442 (2006) ("The objective is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose"). As such, "[i]n these circumstances," the change in custody "is not a change in circumstances on which a modification [of the college expense provisions] may be based." Huddleston v. Huddleston, 51 Mass. App. Ct. at 570. Additionally, "we cannot discern from the judge's analysis whether she gave appropriate consideration" to the parties' intentions in this regard. Mandel v. Mandel, 74 Mass. App. Ct. 348, 355 (2009).
2. Material change in circumstances. Not only did the judge appear to overlook the parties' intentions, she also erred when finding that the change in custody and lack of child support being paid by the mother together constituted a material change in circumstances warranting modification of the college expense provisions. The judge was required to look "to any changes in [the parties'] circumstances since the last modification judgment" (emphasis supplied). Huddleston v. Huddleston, 51 Mass. App. Ct. at 568. Because the custody change and child support waiver were effectuated by the last modification judgment in 2013, they could not properly form the basis for a subsequent modification in 2016.
Moreover, the judge did not find any other material change in circumstances upon which a modification of the college expense provisions could be based. The judge instead found that both parties presently "have the financial ability to finance the payment of [the child's] college costs in a similar manner" and that it would be in the child's best interests for the parties to contribute equally to his college education. However, the relevant inquiry when modifying an existing financial obligation is not whether modification is in the child's best interests, but instead, "whether, and to what extent, the parties' financial circumstances have changed since the entry of the prior judgment." Emery v. Sturtevant, 91 Mass. App. Ct. 502, 508 (2017). "The change may be in the needs or the resources of the parties ... or in their respective incomes." Ibid., quoting from Kernan v. Morse, 69 Mass. App. Ct. 378, 383 (2007). It is apparent from both the judge's findings and the record that neither party's financial circumstances have materially changed since the 2013 modification judgment. The judge found that while the father's income had decreased since the time of the divorce, there had been no decline in his income or assets since the 2013 modification.[8] Likewise, the mother's financial circumstances have remained largely unchanged since the 2013 modification.[9]
However, the father argues that the change in the parties' financial circumstances should be measured from the time of the 2001 divorce, rather than from the 2013 modification, as the college-related provisions of the separation agreement have never been modified. Even if we were to agree with the father's position, and we do not, we still would discern no basis for modification in the record. The mere fact that the father's income has decreased since the divorce "does not alone compel a modification." Schuler v. Schuler, 382 Mass. 366, 371 (1981). Here, the record reflects that the decrease in the father's income has been more than offset by a substantial decrease in his expenses, largely due to the fact that he is no longer obligated to pay $90,000 per year in alimony and child support.[10] Moreover, the father's assets have continued to increase in value since the time of the divorce, from approximately $709,203 in 2001, to $1,288,489 in 2016.[11] Accordingly, there appears to be no material change in the father's overall ability to pay for college. Despite this, the judge found the parties to be capable of contributing to college in a "similar manner" as they both have chosen to live in single-income households and have "access" to relatively equal assets. However, in so finding, the judge improperly considered the income and assets of the wife's current husband, despite that he has no obligation to support the parties' child.[112] See Murray v. Super, 87 Mass. App. Ct. 146, 155 (2015) (detailed findings are required to justify treating financial contributions from new spouse as source of funds available to support child of prior marriage).[13] Absent her current husband's contributions, the mother's overall financial circumstances have not materially changed since the divorce.[14]
Conclusion. Because the 2013 change in custody cannot form the basis for a modification under the circumstances of this case, and because the judge did not find, nor does the record reflect, any material change in the parties' overall financial circumstances since the last modification judgment, it was error to modify the college-related provisions of the separation agreement. Accordingly, the 2016 modification judgment is reversed.[15] ,[16]
Judgment of modification dated August 31, 2016, reversed.

The parties agreed that the father would initially pay $50,000 per year in child support (payable in monthly installments of $4,166.66) until December 31, 2005, at which time the amount would be reduced to $40,000 ($3,333.33 per month). The parties further agreed that the father would pay alimony of $40,000 per year (payable in monthly installments of $3,333.33) until December 31, 2005, at which time the amount would be reduced to $35,000 ($2,916.66 per month).

Exhibit B of the separation agreement (entitled "Child Support") defined "emancipation" as occurring upon the earliest of the following events: (1) the death or marriage of the child; (2) the child living with the father in essentially a primary custodial relationship; (3) the child's voluntary entry into the military; or (4) the child attaining the age of eighteen, unless enrolled in a full-time college undergraduate degree program, in which case emancipation would occur upon the child's graduation from college or the child attaining age twenty-three, whichever occurs sooner.

The separation agreement originally provided that, "[i]n the event of a change in circumstance, either party may request a modification of [the father's child support] payments. In any instance, all child support ... shall cease upon emancipation of the minor child as herein defined." This provision was slightly modified in 2002, when the parties replaced it with the following language: "Based upon material change of circumstances either party may request a modification in child support payments until the emancipation of the child."

The parties also agreed to a subsequent modification in 2008, reducing the husband's monthly child support obligation from $3,333 to $2,000.

The father married his current wife in 2013.

The parties also agreed that the mother would pay for one-half of certain extracurricular activities, up to $2,000 per year, along with one-half of the child's uninsured medical expenses.

In fact, the father's weekly income increased slightly, from $3,520 in 2013, to $3,766.75 in 2016. The father's assets also increased, from $906,534 in 2013, to $1,288,489 in 2016.

The mother's weekly income nominally increased, from approximately $19 in 2013, to $250 in 2016. The mother's reported assets also modestly increased, from $557,500 in 2013, to $627,207 in 2016. The mother's asset figures reflect one hundred percent of her individual assets and fifty percent of the assets held jointly with her current husband.

According to the father's financial statements, his weekly income declined by approximately $1,738 since the time of the divorce (from $5,504.70 in March of 2001 to $3,766.75 in July of 2016). However, his weekly expenses were reduced by approximately $2,797 (from $6,492.31 in November of 2001, to $3,694.60 in July of 2016). It is worth noting that the father's 2016 expenses already include $1,189.80 per week for the child's college expenses. Accordingly, the father's expenses (excluding college payments) have actually decreased by nearly $4,000 per week since the time of the divorce. The judge also found that the father's expenses did not substantially increase when the child began living with him.

The 2016 figure includes all assets held in the father's individual name, along with one hundred percent of the equity in the home that he jointly owns with his current wife. The father's current wife also has individually-held assets of her own.

Payment of college expenses is often treated as a "component of a child's needs" in connection with child support. Purdy v. Colangelo, 61 Mass. App. Ct. 362, 364-365 (2004).

Since 2001, the mother's weekly income has increased from $0 to $250, and her reported assets have increased from $475,750 to $627,207.

We note that it is unclear whether the judge was authorized to order the child, who was not a party to the proceedings below, to pay for ten percent of his own college expenses. The judge did not cite any legal authority, nor are we aware of any, which would permit such an order. However, we need not reach that issue as the 2016 modification judgment has been reversed in its entirety.

The parties' requests for appellate attorney's fees and costs are denied.